UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SKYLAR W, | : | |
| | : | MAR 31 2023 PM6:06 |
| Plaintiff, | : | FILED-USDC-CT-HARTFORD |
| | : | |
| v. | : | Civil No. 3:22-CV-168-RAR |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**RULING ON PENDING MOTIONS**

Skylar W. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated April 28, 2021. Plaintiff timely appealed that decision.

Currently pending before the Court are plaintiff's motion to reverse or remand his case for a hearing (Dkt. No. 22) and defendant's motion to affirm the Commissioner's decision (Dkt. No. 27).

For the reasons that follow, the plaintiff's motion to remand or reverse is DENIED and the Commissioner's motion to affirm is GRANTED.

1

## PROCEDURAL HISTORY

Plaintiff initially filed for Child's Insurance Benefits and Supplemental Security Income under Title XVI on November 26, 2019 with an alleged onset date ("AOD") of July 28, 2016. (R. 256 and 267.) Following an initial denial on April 17, 2020 and upon reconsideration on July 24, 2020, Administrative Law Judge Joshua Menard("ALJ") held a hearing on April 13, 2021. (R. 23.) Following the hearing, ALJ Menard issued a written decision denying plaintiff's application on April 28, 2021. (R. 23-33.) Plaintiff thereafter sought review by the Appeals Council, which was denied on December 2, 2021. (R. 1-7.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #1.)

. The plaintiff has filed a statement of material facts along with his brief. (Dkt. #23.)  Defendant, accordingly, filed a response to the statement of material facts indicating general agreement and some additional material facts.  (Dkt. #27-2.) The Court has reviewed, and generally adopts the facts as set forth in the parties' submissions and will not fully recite them here.  The Court will, of course, cite to specific facts and the record as needed throughout this opinion.

## THE ALJ'S DECISION

After applying the five-step evaluation process, the ALJ concluded that plaintiff was not disabled within the meaning of

2

the Social Security Act from his AOD of July 28, 2016, through the date of the ALJ's opinion. (R. 23–33.) At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 26.) At step two, the ALJ found that plaintiff had the following severe impairments: "Depression Disorder, Anxiety Disorder, Post Traumatic Stress Disorder, and Autism Spectrum Disorder." (R. 26.)

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. 27.) The ALJ paid particular attention to Listings 12.04, 12.06, 12.10 and 12.15 related to plaintiff's mental health impairments. However, the ALJ indicated that the plaintiff's treatment records and other evidence in the record did not indicate sufficient symptomology to meet any of the identified Listings. (R. 27-28.)

The ALJ then found that the plaintiff had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [plaintiff] can perform simple, routine, tasks. He would do best in a quiet, low stimulation environment, working independently, with no interaction with the public.

(R. 22.) At step four, the ALJ concluded that plaintiff did not have past relevant work. (R. 32.)  At step five of the process, the ALJ determined that based on the testimony of a vocational expert, there were sufficient jobs available in the national economy that plaintiff could perform.  Specifically, the ALJ identified the positions of Packager, Garment Server, and Marker II.  (R. 33.)

Upon the completion of the five-step sequential evaluation process, the ALJ determined that the plaintiff was not under a disability between the AOD, July 28, 2016, and the date of the decision.  (R. 30.)

**STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1]  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g).  Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  Id.; Wagner v. Sec'y of Health and Human Servs., 906

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

F.2d 856, 860 (2d Cir. 1990).   Rather, the court's function is
to ascertain whether the Commissioner applied the correct legal
principles in reaching her conclusion, and whether the decision
is supported by substantial evidence.   Johnson v. Bowen, 817
F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside
the decision of the Commissioner if it is supported by
substantial evidence.   Berry v. Schweiker, 675 F.2d 464, 467 (2d
Cir. 1982).   Further, if the Commissioner's decision is
supported by substantial evidence, that decision will be
sustained, even where there may also be substantial evidence to
support the plaintiff's contrary position.   Schauer v.
Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial
evidence as "'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'"   Williams on
Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)
(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).
Substantial evidence must be "more than a scintilla or touch of
proof here and there in the record."   Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are
payable to an individual who has a disability.   42 U.S.C.
§ 423(a)(1).   "The term 'disability' means . . . [an] inability
to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific

## I.   Discussion

In this case, plaintiff has raised three claims of error, all of which he argues would on their own necessitate remand of the ALJ's decision.  First, Plaintiff argues that the ALJ erred in finding that the plaintiff did not meet or exceed the requirements for a listed impairment. (Dkt. #22-1 at 5-16.) Second, that the ALJ erred because his RFC determination is not supported by substantial evidence. (Dkt. #22-1 at 16-19.) Finally, plaintiff asserts that the ALJ improperly evaluated the medical opinion evidence in the record. (Dkt. #22-1 at 19-23.) The Commissioner has responded to each argument and generally argues that the decision of the ALJ is free of legal error and supported by substantial evidence. (Dkt. #27 -1 at 1.)

### 1. The ALJ's Listings Determination

"A finding of disability will ordinarily be justified when the individual's impairment is one which is as severe as the impairments contained in the Listing of Impairments." <u>Titles II & XVI: The Sequential Evaluation Process</u>, SSR 86-8 (S.S.A. 1986).  "The Listing of Impairments . . . contains over 100 medical conditions which would ordinarily prevent an individual from engaging in any gainful activity." <u>Id.</u>  "Thus, when such an individual's impairment or combination of impairments meets

_____

job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." <u>Id.</u>

or equals the level of severity described in the Listing, and also meets the duration requirement, disability will be found on the basis of the medical facts alone in the absence of evidence to the contrary." Id.

An ALJ's decision at step three is not supported by substantial evidence if the ALJ simply "state[s] that he ha[s] considered the criteria in [the listing] and recited the criteria without any further discussion" and fails to explicitly state that the plaintiff did not meet the criteria. Howarth v. Berryhill, No. 3:16-CV-1844 (JCH), 2017 WL 6527432, at *4 (D. Conn. Dec. 21, 2017). "Where. . . the court cannot discern the ALJ's rationale because the ALJ failed to address the evidence in the record on either side, the ALJ's failure to articulate is itself a sufficient basis to remand." Id. at *8.

As such, the ALJ may not "summarily dispose[] of step three with conclusory statements that [the plaintiff] does not meet either listing, followed by a recitation of the elements of each listing." Nieves v. Colvin, No. 3:15-CV-01842 (JCH), 2016 WL 7489041, at *5 (D. Conn. Dec. 30, 2016). While "the court can 'look to other portions of the ALJ's decision and to credible evidence in finding that his determination was supported by substantial evidence'" the ALJ must provide sufficient "rationale or reasoning to support her determination that" the plaintiff did not meet the listing criteria. Id. at *5, *6

8

(quoting <u>Berry v. Schweiker</u>, 675 F.2d 464, 469 (2d Cir. 1982)).
Without such, "the court is left without a decision of which to
engage in meaningful review." <u>Id.</u>

However, where there is little or no evidence in the record
to support that the plaintiff meets the criteria of the listing,
the ALJ's analysis is sufficient if the ALJ "spoke to a lack of
evidence in the record that those criteria were met" in addition
to listing the criteria. <u>Monahan v. Berryhill</u>, No. 3:18-CV-
00207 (JAM), 2019 WL 396902, at *5 (D. Conn. Jan. 31, 2019).
Such an analysis would be supported by substantial evidence.
<u>Id.</u>

Plaintiff argues that at Step 3, the ALJ should have found
that plaintiff met the requirements of Listing 12.04 related to
Depressive Disorders, 12.06 related to Anxiety Disorders, 12.10
related to Autism Disorders and 12.15 related to Trauma
Disorders.  Under the regulations to meet any of the referenced
listings, the plaintiff would have to provide evidence to
indicate that he met the "Paragraph B" criteria under the
listings related to mental health disorders.  To do so,
plaintiff must show an extreme or two marked limitations in the
following areas: "Understand, remember, or apply information;
interact with others; concentrate, persist, or maintain pace;
and adapt or manage oneself." 20 C.F.R. § Pt. 404, Subpt. P,
App. 1, §12.00(A)(2)((b).  Here, plaintiff asserts that the

evidence supports a finding that he had marked limitations in
two of the paragraph B categories, interacting with others and
adapting and managing oneself. ((Dkt. #22-1 at 8.)

The Social Security Administration regulations define
"moderate" limitations as: "functioning in this area
independently, appropriately, effectively, and on a sustained
basis is fair." 20 C.F.R. Pt. 404, Subpt. P, §12.00(F)(2)(c).
"Marked" limitations are defined as: "functioning in this area
independently, appropriately, effectively, and on a sustained
basis is seriously limited." Id. at § 12.00(F)(2)(d). "Extreme"
limitations are defined as an inability "to function in this
area independently, appropriately, effectively, and on a
sustained basis." Id. at § 12.00(F)(2)(e). Interacting with
others involves the ability to "relate to and work with
supervisors, co-workers, and the public. ." Id. at §
12.00(E)(2). Adapting or managing oneself involves "the
abilities to regulate emotions, control behavior, and maintain
well-being in a work setting." Id. at § 12.00(E)(4).

The Commissioner responds to plaintiff's listings argument
by asserting that the ALJ's decision is supported by substantial
evidence. (Dkt. #27-1 at 4-6.)  The Commissioner highlights
that in both the domain of interacting with others and adapting
and managing oneself, the ALJ determined that the plaintiff had
only a moderate limitation and supported that finding with

reference to substantial evidence in the record.  (Dkt. #27-1 at
4-5.) The Court agrees.

The ALJ identified that plaintiff had a moderate limitation
in interacting with others. (R. 27.)  As stated above, a
moderate limitation means that a party's ability to function in
the domain "independently, appropriately, effectively, and on a
sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1,
§12.00(F)(2)(c).  The ALJ pointed to the plaintiff's own
testimony which indicated that plaintiff could work part-time
with the public, in part through operating a cash register.
However, as also indicated by the ALJ, this caused the plaintiff
to need breaks and was tiring.  (R. 27.) The ALJ additionally
cites to the plaintiff's self-provided function report.
Consistent with plaintiff's testimony, the report indicates that
working at busy places would be tiring for plaintiff. (R. 351.)
However, it further states that the plaintiff does not have
problems getting along with family, friends, neighbors, or
others. (R. 356.)  There is also reference to playing games on
line with friends and eating dinner with his foster family. (R.
355.) But the ALJ did not end the analysis there, the ALJ noted
that treatment records indicate that plaintiff had poor eye
contact "but otherwise the [plaintiff] was cooperative, with
normal speech." (R. 28.)  The ALJ supported this assertion with

citation to multiple treatment notes in the record.  (R. 541, 599, and 613.)

The Court additionally notes, that the ALJ also found that the plaintiff indicated in his testimony that he gets rides from family and friends on occasion.  (R. 28, 54.)  Plaintiff uses Uber at times to get to work.  (R. 54.)  A review of the testimony further indicates that the plaintiff has co-workers that he likes and can seek out if he needs help.  (R. 57.) Additionally, elsewhere in the opinion the ALJ references the medical opinion provided by LCSW Danielle Trindade, addressed later in this opinion. (R. 31.) The medical opinion from LCSW Trindade indicated that while the plaintiff does have a frequent problem interacting with others, he has average ability to respond appropriately to those in authority and at getting along with others without exhibiting behavioral extremes. (R. 565.)

Likewise, in the domain of adapting or managing oneself the ALJ also found a moderate limitation.  (R. 28.)  Once again, the ALJ relies in part on the hearing testimony from the plaintiff to support this finding.  The hearing indicated that the plaintiff could "live on his own, make simple meals, handle personal care, do chores, and work a part-time job." (R. 28.) This assertion is supported by the record.  Plaintiff, at the time of the hearing, was living independently.  (R. 53.)  The plaintiff indicated a lack of enjoyment from chores and cooking.

However, he made his own meals and was able to keep his apartment clean (R. 54-55.) Plaintiff also cared for his personal hygiene without a problem (R. 54.) The ALJ additionally cites to several treatment notes indicating that plaintiff's providers noted him as having normal grooming and hygiene and note no evidence to indicate that plaintiff has inability to be aware of hazards or problems taking precautions as well. (R. 418, 453, 536, 551, 569, 607.) In addition to what was noted by the ALJ, many of these same records indicate plaintiff was calm, communicative, and attentive, with organized and intact thought and an appropriate affect.

The Court does not struggle to determine that the ALJ has met the requirements at step 3 of the sequential evaluation process. Plaintiff does little more than invite the Court to reweigh the evidence by highlighting notes and findings that support plaintiff's position. While the record may indeed offer support both for the ALJ's determination and plaintiff's assertions, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). The issue is whether substantial evidence supports the ALJ's determination—not plaintiff's. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982). Thus, because the ALJ's determination that plaintiff did not meet the listings criteria "rests on adequate findings supported by evidence

having rational probative force," his determination is supported by substantial evidence.  <u>Veino</u>, 312 F.3d at 586.

### 2. The ALJ's RFC Determination

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record."  20 C.F.R. § 404.1520(e).  An individual's RFC is the most an individual can still do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  Plaintiff has the burden of establishing a diminished RFC.  See <u>Butts v. Barnhart</u>, 388 F.3d 377, 383 (2d Cir. 2004).

The Court does not dispute that plaintiff indeed suffered symptoms from his mental health conditions which impaired his ability to function in society.  However, the issue is whether the record supports the ALJ's finding that plaintiff's symptoms did not preclude him from pursuing any substantially gainful activity.  <u>Fisher v. Barnhart</u>, 363 F. Supp. 2d 153, 168 (D. Conn. 2005).  However, the record supports the finding that plaintiff was not precluded from pursuing all substantially gainful activity.

Plaintiff generally argues that the ALJ's determination of the plaintiff's RFC is not supported by substantial evidence.

(Dkt. #22-1 at 16.)  Plaintiff asserts that that ALJ improperly relied on the plaintiff's part-time work and the fact that he lived alone to support the RFC (DKt. #22-1 at 17.)  Plaintiff's argument continues by highlighting several additional limitations that he argues should be included in the RFC.  (Dkt. #22-1 at 17-18.)  Plaintiff concludes this argument by directing the Court to a handful of treatment notes in the record which support these additional limitations.  (Dkt. #22-1 at 19.)

The ALJ determined that plaintiff had an RFC to

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [plaintiff] can perform simple, routine, tasks.  He would do best in a quiet, low stimulation environment, working independently, with no interaction with the public.

(R. 22.) In support of this finding the ALJ did indicate that plaintiff's current work and the fact that he lived alone alone factored into the determination.  However, in context, the ALJ indicated that the work was only part-time, noting that the plaintiff worked approximately 30 hour [sic] a week." (R. 29.) The ALJ noted that "interacting with the public caused significant fatigue" for plaintiff. (R. 29.)  After reviewing significant portions of the medical evidence, the ALJ also noted that the plaintiff himself articulated that he might be able to work full time in a less public facing position. (R. 30.)  While plaintiff took issue with the ALJ's reference to plaintiff's

employment and living arrangements, they are supported by the
evidence and not erroneous.

In his review of the medical treatment discussed above, the
ALJ noted such findings as "normal speech, normal memory, normal
concentration, and normal cognitive functioning." (R. 30 (citing
R. 413-16, 418-19, 422, 451-52).)  The ALJ noted that plaintiff
appeared to multiple providers to have been stable on medication
and had normal mental health status examinations.  (R. 30
(citing R. 629-31 and 633-36.)

The ALJ further reviewed all of the medical opinion
evidence in the record in formulating the RFC for plaintiff.
(R. 31-32.)  The ALJ's discussion of this evidence lends further
support to the RFC finding.

Plaintiff has failed to show that the ALJ's evidence in
support of his RFC determination is insufficient for "a
reasonable mind [to] accept as adequate to support a conclusion"
that plaintiff was not precluded from participating in any
substantially gainful activity.  Williams, 859 F.2d at 258
(quoting Richardson, 402 U.S. at 401).  Plaintiff has failed to
show that the ALJ's decision was not supported by substantial
evidence.  Once again, plaintiff's argument is premised on the
notion that there was other evidence in the record to support
plaintiff's position.  However, this is insufficient to
establish that the ALJ's decision is not supported by

substantial evidence.  The Court therefore finds that the ALJ's opinion is supported by substantial evidence.

### 3. The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff devotes the final portion of his argument to argue that the ALJ failed to properly apply the treating physician rule to the opinions of plaintiff's treating providers.  This argument is misplaced as the standard plaintiff relies on, formerly known as the treating physician rule, only applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527.

Under the new regulations, an ALJ is required to "articulate how he considered the medical opinions and how persuasive he finds the opinions." Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021). "The Regulations define a medical opinion as 'a statement from a medical source about what you can still do despite your impairments.'" Juan T. v. Kijakazi, No. 3:20CV01869(SALM), 2021 WL 4947331, at *7 (D. Conn. Oct. 25, 2021).

The Social Security regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  The ALJ will consider any medical opinions according to certain

factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c). "The ALJ must explain how he considered the 'supportability' and 'consistency' factors in the evaluation, but the ALJ need not explain how he considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical." Jessica P. v. Kijakazi, No. 3:21-cv-84(SRU)(RAR), 2022 WL 875368, at *3 (D. Conn. Mar. 4, 2022) (quoting 20 C.F.R. § 404.1520c(b)).

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

Plaintiff's argument in relation to the medical opinion
evidence centers primarily on two treating provider opinions:
LCSW Danielle Trindade and Dr. Aubri Magnifico.  (Dkt. #22-1 at
22-23.)  Plaintiff primarily argues that the ALJ failed to
properly articulate the previously discussed "treating physician
rule" by not discussing each providers credibility,
qualifications, length of treatment, and frequency of treatment.
(Dkt. #22-1 at 22-23.)  However, as noted these secondary
factors must be considered but not expressly articulated under
the new regulations.  Additionally, the Court notes that the ALJ
did provide the necessary analysis of the underlying medical
opinions pursuant to the new regulations.  The ALJ noted that
LCSW Trindade's opinion was partially persuasive.  The ALJ
highlighted LCSW Trindade's findings and noted that the findings
were largely consistent with other evidence in the record.  (R.
31.)  Contrary to plaintiff's claim that the ALJ did not support
these conclusions with any citations, the ALJ cited to records
from Dr. Saxena and Dr. Magnifico in support of his findings.
(R. 31 (citing Ex. 413-15, 418-19, 422, 451-52, 535, 604, 607,
629-30).)  As for the opinion, in the form of a letter, from Dr.
Magnifico, the ALJ determined that the opinion did not contain a
functional assessment of what the plaintiff could do in a work
environment, and thus was unpersuasive.

The Court notes that in failing to cite the proper standard for the evaluation of the medical opinion evidence, the plaintiff has not raised specific concerns of legal error that are relevant to the Court's analysis.  In any event having reviewed the ALJ's application of the current legal standard, there does not appear to be a legal error.  Thus, the question turns to substantial evidence.  In this case there is substantial evidence to support the ALJ's findings.

As articulated previously, and related to all arguments raised by plaintiff, "whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order).  Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

A reviewing Court does not "decide the facts anew, nor [] reweigh the facts, nor [] substitute its judgment for the judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). "Indeed, [t]he fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to

comply with the applicable standards." <u>Gina C. v. Comm'r of Soc.</u> <u>Sec. Admin.</u>, No. 3:21CV00423(SALM), 2022 WL 167922, at *10 (D. Conn. Jan. 18, 2022). Here, there very well may be substantial evidence in the record to support plaintiff's position, there is nevertheless substantial evidence to support the ALJ's decision.

<u>**CONCLUSION**</u>

For the foregoing reasons, plaintiff's motion to remand is DENIED and the Commissioner's motion to affirm is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. <u>See</u> 28 U.S.C. § 636(c)(3).

SO ORDERED this 31st day of March, 2023 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge
